UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LAUREN HOLLEY; JAMES HOLLEY; NANETTE HOLLEY; and ALYSSA HOLLEY,<br><br>    Plaintiffs,<br><br>v.<br><br>ALAJAH TRIPP; JERMIAH TRIPP; JESSICA TRIPP; ELK SUMMIT PROPERTIES LLC.; RICHARD M. PINOL; HARDEE, PINOL & KRACKE, PLLC.; and BIG SKY ID CORP.,<br><br>    Defendants. | Case No. 2:24-cv-00071-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court are: (1) Defendants' partial motion to dismiss (Dkt. 13); Plaintiffs' motion for leave to file a second amended complaint (Dkt. 37); and Plaintiffs' motion to seal (Dkt. 38). Having reviewed the record and the parties' submissions, the Court finds that oral argument would not significantly aid its decision-making process, and it decides the motions on the parties' briefing. *See* Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). For the reasons set forth below, the Court denies the Defendants' motion to dismiss Plaintiffs' federal claims under the Wiretap Act, declines to exercise supplemental jurisdiction over the Plaintiffs' state law claims, denies as moot Plaintiffs' motion for leave to file a second amended complaint, and grants Plaintiffs' motion to seal.

**MEMORANDUM DECISION AND ORDER - 1**

I.     BACKGROUND

A.     **Factual Background**

This case arises from a domestic dispute between Plaintiff Lauren Holley (Lauren) and Defendant Alajah Tripp (Alajah), who are embroiled in state court proceedings regarding a child custody dispute and civil protective orders. (Dkt. 3-2 at p .2). Plaintiffs allege that in January 2021, Lauren discovered she was pregnant with Alajah's child and that Alajah convinced Lauren to move from Texas to live with him in Idaho to raise the child. (Dkt. 2 at ¶¶ 16, 18). Alajah's mother, Jessica Tripp (Jessica) offered that Lauren could live in a property in Coeur d'Alene (the residence) owned by Elk Summit Properties, LLC (Elk Summit); Jessica is the managing member of Elk Summit.[1] (*Id.* at ¶ 20). By April 2021, Lauren had moved into the residence with Alajah. (*Id.* at ¶ 21).

After Lauren moved in, Jessica purchased and installed a "secret video recording device disguised as a clock radio" (the recording device) in the residence's living room. (*Id.* at ¶ 22). Lauren alleges she was unaware of the recording device, although the parties dispute this fact. (Compare *Id.* at ¶¶ 23, 45 *with* Dkt. 13-2 at pp. 5-6) (citing Dkt. 13-1 ¶¶ 12-13). By early 2022, Alajah and Lauren's relationship had deteriorated, and in April, Alajah moved out of the residence. (Dkt. 2 at ¶ 30).

---

[1]     Although Plaintiffs allege Jessica is the "Governor" of Elk Summit, the Idaho Secretary of State's business search website shows Jessica is the managing member of Elk Summit. *See* Fed. R. Evid. 201(b)(2) (providing for judicial notice of facts accurately and readily determined from sources whose accuracy cannot be reasonably questioned).

Plaintiffs allege that Defendants used the recording device to "routinely spy on Lauren" while she lived at the residence, including to listen to her conversations and conversations involving the other Plaintiffs, who include Lauren's father, Jim; her mother, Nanette; and her sister, Alyssa. (Dkt. 2 at ¶¶ 27, 40). For example, Plaintiffs allege the recording device recorded Jim's private phone conversations about Lauren's situation and her plans (*id.* at ¶ 39); a speakerphone conversation among Lauren, Nanette, and Alyssa (*id.* at ¶ 40); another speakerphone conversation among Lauren, Jim, and Alyssa discussing the child custody proceedings and Alajah, Jessica, and Alajah's father, Jeremy (the Tripps) (*id.* at ¶ 44); and an in-person conversation between Lauren and Jim contemplating a move to Arizona. (*Id.* at ¶¶ 47-50).

Plaintiffs allege Defendants disclosed the recorded conversations and used them for their benefit. For example, they allege that Alajah provided the recordings to his attorney, Richard M. Piñol of Hardee, Piñol & Kracke, PLLC (HPK), and that Piñol used the recordings in the child custody proceedings to benefit himself, Alajah, and HPK. (*Id.* at ¶¶ 41, 43). Plaintiffs also allege Jermiah Tripp (Jeremy) listened to a conversation recorded in the residence between Lauren and her friend, Linda Lanker. (*Id.* at ¶ 58). According to Plaintiffs, Jeremy—while acting in his capacity as the president of Big Sky ID Corp (Big Sky)—used the information he learned from the recording to cancel a business venture between Lanker and Big Sky.[2]

On April 11, 2022, Jeremy removed the recording device from the residence, and a few days later, he suggested Lauren change the Wi-Fi password to ensure any remaining recording equipment did not work. (*Id.* at ¶¶ 51, 56). Lauren moved out of the residence in July 2022,

---

[2] Jeremy is also, apparently, a member of Elk Summit.

sometime after Alajah, through his counsel, submitted recordings to the state court in June 2022. (*Id.* at ¶¶ 65-66).

**B.      Procedural Background**

Plaintiffs' amended complaint is the operative complaint. (Dkts. 1, 2). It alleges several state law claims against Defendants, including defamation, defamation *per se*, libel, and slander against the Tripps; tortious interference with contract against Jeremy; invasion of privacy against the Tripps and Elk Summit; intentional infliction of emotional distress against all Defendants; constructive eviction against the Tripps and Elk Summit; and a violation of the Idaho Child Protective Act, Idaho Code § 16-1601, *et. seq.*, against Alajah. (Dkt. 2).

Plaintiffs also allege federal claims under the Electronic Communications Privacy Act, 18 U.S.C. § 2510, *et. seq.*, also known as the Wiretap Act. (Dkt. 2 at Counts 18 through 30). Relying on the Act's private right of action, 18 U.S.C. § 2520, Plaintiffs allege that: (1) the Tripps and Elk Summit willfully and intentionally endeavored to intercept or in fact intercepted Plaintiffs' oral communications in the residence (*id.* at Counts 18 through 21); the Tripps, Elk Summit, Piñol, and HPK intentionally disclosed the intercepted communications[3] (*id.* at Counts 22 through 27); and, Alajah, Big Sky, Piñol, and HPK intentionally used the intercepted communications for their benefit. (*Id.* at Counts 28 through 30). Plaintiffs also move for punitive damages but do not specify any authority providing for such an award. (*Id.*).

---

[3]      While Plaintiffs' amended complaint alleges unlawful "dissemination," the Wiretap Act prohibits unlawful "disclosure." 18 U.S.C. § 2511(1)(c). Defendants' motion to dismiss addresses the "dissemination" claims as if Plaintiffs had correctly alleged "disclosure." (Dkt. 13-2 at p. 10 n.1). The Court, likewise, treats Plaintiffs' claims as disclosure claims.

**MEMORANDUM DECISION AND ORDER - 4**

Defendants move under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss several of Plaintiffs' state law claims and their Wiretap Act claims. (Dkt. 13). In support, Defendants filed a fifteen-page "Statement of Facts," detailing the dispute between the parties and citing documents and testimony in the state court proceedings. (Dkt. 13-1). Defendants also moved the Court to take judicial notice of certain state court documents, which purportedly support their theory that Piñol disclosed the recordings to impeach Lauren during the state court proceedings and that such use does not violate the Act. (Dkt. 13-2 at p. 11). Plaintiffs moved to strike Defendants' Statement of Facts and asked the Court to deny their request for judicial notice. (Dkt. 23). The Court granted Plaintiffs' motion. (Dkt. 41). Specifically, it denied Defendants' request for judicial notice of state court documents, struck their Statement of Facts as violative of the local rules, and declined to consider Defendants' motion to dismiss as a summary judgment motion. (*Id.*).

After Defendants moved to dismiss Plaintiffs' amended complaint, Plaintiffs moved for leave to file a second amended complaint to allege new state law claims and more conduct related to Lauren and Alajah's ongoing domestic dispute. (Dkt. 37). In support of their motion to amend, Plaintiffs filed a separate motion to seal documents, which requested the Court seal a prior filing including the minor child's confidential medical information (*see* Dkt. 27-6 at pp. 16-17) and to seal the exhibits submitted in support their second amended complaint. (Dkt. 38-1 at pp. 1-2). Currently pending before the Court are Defendants' motion to dismiss, Plaintiffs' motion for leave to file a second amended complaint, and Plaintiffs' motion to seal.

## II. LEGAL STANDARD

Under Rule 12(b)(6), a motion to dismiss for failure to state a claim on which relief can be granted tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In assessing dismissal of claims under Rule 12(b)(6), the Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court need not accept as true conclusory allegations, unreasonable inferences, legal characterizations, or unwarranted deductions of fact or legal conclusions couched as facts. *Id*. at 678-79; *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

Generally, a district court may not consider any materials beyond the complaint when ruling on a Rule 12(b)(6) motion. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989). If the court considers evidence outside the pleadings, it must convert a Rule 12(b)(6) motion into a motion for summary judgment under Rule 56. "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## III.     ANALYSIS

A.     **Defendants' Motion to Dismiss -- Wiretap Act Claims**

In their motion to dismiss, Defendants assert Plaintiffs' claims under the Wiretap Act fail as a matter of law. (Dkt. 13-2 at p. 12). The Act creates a private right of action for any person whose "wire, oral, or electronic communication" is unlawfully intercepted, disclosed, or used. 18 U.S.C. § 2520. To allege a plausible claim under the Act, a plaintiff must allege the defendant (1) without consent (2) intentionally intercepted (3) the contents of a communication (4) using a device. 18 U.S.C. § 2511(1); *India Price v. Carnival Corp*, 712 F. Supp. 3d 1347, 1354 (S.D. Cal. 2024). "Wiretapping requires a third party [eavesdropper] to the communication. *India Price*, 712 F. Supp. 3d at 1355; *Tanner v. Acushnet Co.*, Case No. 8:23-cv-00346-HDV-ADSx, 2023 WL 8152104, at *4 (C.D. Cal. Nov. 20, 2023).

Plaintiffs here allege claims under each category of unlawful conduct, namely that Defendants unlawfully intercepted, disclosed, and used Plaintiffs' oral communications. Before addressing whether Plaintiffs allege viable Wiretap Act claims, the Court addresses whether the alleged recordings constitute "oral communications" under the Act—an issue which Defendants inferentially raise. As discussed below, the Court concludes the recordings are oral communications under the Wiretap Act and that Plaintiffs have alleged viable claims under the Act.

1.     **Oral Communications**

Defendants argue Plaintiffs' interception claims fail because Lauren had no expectation of privacy in the residence. (Dkt. 13-2 at pp. 4-6). A party's expectation of privacy is an element of

an "oral communication" for purposes of the Wiretap Act.[4] The Act defines "oral communication" as "any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation, but such term does not include any electronic communication." 18 U.S.C. § 2510(2). In other words, a statement is an oral communication under the Act only if a party has a reasonable expectation of privacy in that communication.

Here, Plaintiffs' amended complaint alleges "oral communications." (Dkt. 2 at pp. 23-31). Specifically, Plaintiffs allege that they had private conversations near the recording device in the residence's living room and that the device captured their conversations without their knowledge. (*See, e.g.*, *id.* at ¶¶ 23, 39, 59, 65). Challenging these and similar allegations, Defendants assert Lauren did not have a privacy expectation because she knew "there were other cameras in the [residence] capable of capturing oral communications." (Dkt. 13-2 at p. 4). In support, Defendants rely on their Statement of Facts, which references state court testimony.

Whether Lauren had knowledge of other cameras and whether that knowledge impacted her privacy expectations, however, are questions of fact. For purposes of resolving Defendants' Rule 12(b)(6) motion, the Court does not consider factual issues but rather accepts Plaintiffs' allegations as true. *See Manzarek*, 519 F.3d at 1031 (ruling court must "accept factual allegations

---

[4] Plaintiffs' allegations repeatedly refers to secret video recordings. (Dkt. 2 at ¶¶ 22, 28, 31, 41, 45). Whether these video recordings included audio is unclear. To the extent the videos were silent, they are not covered by the Wiretap Act, and the Court's decision does not address them. *See United States v. Koyomejian*, 970 F.2d 536, 539 (9th Cir. 1992) ("By their plain meaning, these definitions [under the Act] do not apply to silent video surveillance.").

in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."). Having stricken Defendants' Statement of Facts, the Court declines to convert Defendants' Rule 12(b)(6) motion into a summary judgment motion to address factual issues such as Lauren's knowledge of any recording devices in the residence.

The Court also rejects Defendants' argument that Lauren did not have an expectation of privacy in the residence because she did not own the residence, have a lease agreement for it, or have control over it. (Dkt. 13-2 at pp. 4-6). Although Lauren did not allege she owned, leased, or controlled the residence, such an allegation is not necessary to support an expectation of privacy. Rather, a party showing indices of residency may establish a reasonable expectation of privacy regardless of whether she owns the residence. *United States v. Gamez-Orduno*, 235 F.3d 453, 458 (9th Cir. 2000); *see also Minnesota v. Olson*, 495 U.S. 91, 96-97 (1990).

Here, Plaintiffs' amended complaint alleges that when Alajah moved out of the residence in April 2022, Lauren continued to treat the property as her home. (Dkts. 2 at ¶ 30; 13-1 at ¶ 16). Throughout the amended complaint, Lauren alleges indices of residency—including staying overnight, coming and going, receiving guests and receiving mail at the residence. Whether another party owned or had title to the residence does not affect Lauren's allegation of a reasonable expectation of privacy in the residence, including the living room. Accordingly, the Court concludes Plaintiffs have sufficiently alleged an expectation of privacy to aver "oral communications" for purposes of the Wiretap Act.

### 2. Interception Claims

Defendants challenge Plaintiffs' interception claims, arguing that any alleged interception was not contemporaneous; Plaintiffs failed to allege a facial connection to interstate or foreign

commerce; and Plaintiff failed to allege plausible interception claims against Jeremy and Jessica. The Wiretap Act makes it unlawful for a person to "intentionally intercept[], endeavor[] to intercept, or procure[] any other person to intercept or endeavor to intercept any . . . oral . . . communication." 18 U.S.C. § 2511(1)(a). It defines "intercept" as the "aural or other acquisition of the contents of any . . . oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

### a. Contemporaneity

Neither party disputes that the Wiretap Act requires "contemporaneous" interception. Defendants argue that Plaintiffs failed to allege "contemporaneous interception and transmission" under the Wiretap Act because Plaintiffs rely on "mere recording[s]," and "[m]erely alleging a recording device recorded a conversation fails to allege [contemporaneous] interception." (Dkt. 13-2 at p. 5, Dkt. 49 at p. 3). In support of this argument, Defendants principally rely on *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002).

*Konop*, however, is inapposite because it endorsed a narrow definition of intercept only for electronic and wire communications. 302 F.3d at 878. The Ninth Circuit explained that when Congress amended the Wiretap Act, it "was aware of the narrow definition courts had given the term intercept with respect to *electronic communications*" and that, as a result, Congress "accepted and implicitly approved the judicial definition of intercept as acquisition contemporaneous with transmission." *Id.* The Ninth Circuit concluded that the defendant's conduct did not constitute interception because the electronic communications at issue were acquired while in storage. *Id.* While the Ninth Circuit explained an identical logic applies to wire communications, it has not

extended its holding to *oral communications*. *Id.* at 879 (citing *United States v. Smith*, 155 F.3d 1051, 1058 n.11 (9th Cir. 1998)).

Although the Ninth Circuit has not addressed what contemporaneity analysis applies to an interception of an oral communication, it has found an interception where an oral communication was recorded using a tape recorder or similar device. *See, e.g.*, *Pyankovska v. Abid*, 65 F.4th 1067, 1078 (9th Cir. 2023) (finding defendant intercepted oral communication in violation of Wiretap Act when defendant placed recording device in child's backpack to record private conversations); *Siripongs v. Calderon*, 35 F.3d 1308, 1320 (9th Cir. 1994) (finding oral communication, not wire communication, where conversation was recorded on concealed tape recorder while aggrieved party was on phone call and standing near tape recorder). District courts have likewise found interceptions where defendants used devices like tape recorders to capture oral communications. *See, e.g.*, *Lewton v. Divingzzo*, 772 F. Supp. 2d 1046, 1059 (D. Neb. 2011) (finding defendants liable for damages under Wiretap Act for using recording device hidden in teddy bear to record plaintiffs' oral communications); *Treon v. Treon*, No. 15-00212-KD-N, 2015 WL 6964663, at *2 (S.D. Ala. Nov. 10, 2015) (finding recording device intentionally planted by defendant in plaintiff's car violated Wiretap Act).

This authority indicates that when an oral communication is recorded in-person and in real-time, the interception is inherently contemporaneous. *See generally United States v. Turk*, 526 F.2d 654, 658 (5th Cir. 1976) ("If a person secrets a recorder in a room and thereby records a conversation between two others, an 'acquisition' occurs at the time the recording is made."). Thus, when a recording device captures an oral communication, an interception occurs at the time of recording, not when the communication was retrieved from the device's storage. *Id.* ("The

argument that a new and different 'aural acquisition' occurs each time a recording of an oral communication is replayed is unpersuasive.").

Based on this authority, the Court rejects Defendants' argument that Plaintiffs have failed to allege a contemporaneous interception. Plaintiffs assert Defendants used a recording device to record Plaintiffs' conversations "in real time as those communications were being made" in the residence's living room. (Dkt. 2 at ¶¶ 22, 23 and pp. 4-8, Dkt. 43 at p. 5). This alleged in-person, real-time recording is sufficiently contemporaneous. Accordingly, the Court concludes Plaintiffs have alleged contemporaneous interceptions of oral communications.

### b. Interstate Commerce

Defendants also argue that Plaintiffs' interception claims fail because any transmission must "travel[] through a system that affects interstate or foreign commerce" to be an interception and Plaintiffs do not "state a facial connection to interstate or foreign commerce." (Dkts. 13-2 at p. 5, 49 at p. 4). This argument is unpersuasive. Although the Wiretap Act requires that any wire or electronic communication affect "interstate or foreign commerce," 18 U.S.C. § 2510(1), (12), the Act's plain text does not attach any interstate or foreign commerce nexus to its definitions of "oral communication" or "intercept." 18 U.S.C. § 2510(2). Contrary to Defendants' argument, the Ninth Circuit has found an interception of an oral communication where the defendant's recording device system had no apparent effect on interstate or foreign commerce. *See, e.g.*, *Pyankovska*, 65 F.4th at 1072, 1078 ("[Defendant] inserted a recording device into their child's backpack and surreptitiously recorded around twenty hours of private conversations . . . [Defendant] intercepted communications without consent in violation of the Wiretap Act . . . .").

**MEMORANDUM DECISION AND ORDER - 12**

Defendants provide no authority that an *oral communication* must have some connection to interstate or foreign commerce. Although Defendants cite *Rene v. G.F. Fishers, Inc.*, 817 F. Supp. 2d 1090, 1094 (S.D. Ind. 2011), for the premise that "contemporaneous interception must occur while the transmission is traveling through a system that affects interstate or foreign commerce," that case in inapposite. *Rene* addresses only interceptions of electronic communications and does not require an interstate or foreign commerce nexus requirement for oral communications. *Id.* at 1093. ("Defendants correctly point out than an *electronic communication* within the purview of the statute must be transmitted by a system that affects interstate or foreign commerce.") (emphasis added). Because the Wiretap Act does not require that an oral communication travel through a system affecting interstate or foreign commerce, the Court concludes Plaintiffs have sufficiently alleged an interception of an oral communication.

   c. Interception Claims Against Jeremy and Jessica Tripp

Defendants challenge Plaintiffs' interception claims against Jeremy and Jessica. (Dkt. 13-2 at p. 7). In support, they argue Plaintiffs' allegations that Jessica purchased the recording device and that Jeremy removed cameras from the residence and advised Lauren to change the Wi-Fi password are inadequate. (*Id.*). The Wiretap Act provides a private right of action against "the person or entity . . . which engaged" in intercepting an oral communication. 18 U.S.C. § 2520(a). The Ninth Circuit has not extended this provision to encompass a defendant who only "aided" the interception. Further, some district courts within the Ninth Circuit have ruled that the Act "does not provide for a civil action against one who aids and abets a violation of the Wiretap Act." *See, e.g.*, *Crowley v. CyberSource Corp.*, 166 F. Supp. 2d 1263, 1269 (N.D. Cal. 2001) (citing *Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 169 (5th Cir. 2000)).

MEMORANDUM DECISION AND ORDER - 13

Regardless, Plaintiffs have alleged Jessica and Jeremy fully participated in the interceptions. (Dkt. 43 at p. 10). For example, they allege Jessica purchased the recording device and had it installed; Defendants, including Jessica and Jeremy, routinely spied on Laura via the recording device; and Defendants recorded and listened to conversations on the device. (*See, e.g.*, Dkt. 2 at ¶¶ 22, 27, 41, 42, 44, 50). The Court concludes these and other similar allegations are sufficient to draw a reasonable inference that Jeremy and Jessica engaged in intercepting oral communications.[5] *See Naffe v. Frey*, 789 F.3d 1030, 1035 (9th Cir. 2015) (providing party must allege sufficient facts to allow court to draw reasonable inference claim occurred).

### 3. Use Claims

Defendants' challenge Plaintiffs' claims that Alajah, Piñol, HPK, and Big Sky used intercepted oral communications. (Dkt. 13-2 at pp. 8-9). They argue that allegations of listening to the recordings is insufficient to establish "use" under the Wiretap Act and that "use" must involve a volitional act. (Dkt. 13-2 at p. 8). In support, Defendants cite out-of-circuit caselaw ruling that listening is insufficient to establish "use" under the Act. (*See id.*). Further, Defendants argue Piñol had a duty as Alajah's counsel to listen to evidence without incurring liability under the Act. (*Id.* at p. 9).

Regardless of whether simply listening to an intercepted communication constitutes "use" under the Wiretap Act, Plaintiffs allege Alajah, Piñol, HPK, and Big Sky did more than simply

---

[5] Because the Court concludes Jessica and Jeremy allegedly engaged in intercepting oral communications, it does not address Plaintiffs' argument that they may allege an interception claim against Jessica and Jeremy under the "mere procurement or aid theory of liability." (Dkt. 43 at p. 9).

listen to the recordings. For example, Plaintiffs allege Alajah provided the communications to Piñol, who submitted the communication in evidence in the state court proceedings to gain a strategic advantage. (Dkt. 2 at ¶¶ 41, 42). Further, Plaintiffs allege Jeremy, while acting on behalf of Big Sky, used information from intercepted communications to make a business decision for Big Sky. (Dkt. 59). At this stage of the litigation, these allegations are sufficient to allege Defendants used the intercepted communications.[6] *See Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Pyankovska*, 65 F.4th at 1075 (ruling counsel used and disclosed intercepted communications when he filed transcripts in state court public docket); 18 U.S.C. § 2515 ("Whenever any . . . oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court . . . if the disclosure of that information would be in violation of this chapter."); *cf. Vertkin v. Vertkin,* No. 07-4471 SC*,* 2007 WL 4287512, at *2 (N.D. Cal. Dec. 6, 2007) (finding plaintiffs sufficiently pled Wiretap Act claim where defendant used "information obtained from . . . software for various financial gains").

---

[6]    The Court reaches this conclusion despite Defendants' assertion of an impeachment exception to the unlawful use of an intercepted communication. As discussed below, whether Alajah's counsel relied on the communications in state court only for impeachment purposes is a factual question. *Marsh v. Curran*, 362 F. Supp. 3d 320, 327 (E.D. Va. 2019) (declining to extend impeachment exception into blanket litigation privilege.).

**MEMORANDUM DECISION AND ORDER - 15**

### 4. Disclosure Claims

Defendants challenge Plaintiffs' claims for intentional disclosure of oral communications, arguing that Defendants disclosed the recordings to obtain the state court's ruling on the recordings' admissibility and to impeach Lauren's testimony in the state court proceedings and that such disclosures do not violate the Wiretap Act. (Dkt. 13-2 at p. 10). In support, Defendants rely on *United States v. Echavarria-Olarte*, 904 F.2d 1391 (9th Cir. 1990). In that case, a criminal defendant challenged the admissibility of communications obtained through judicially approved wiretaps under Title III of the Omnibus Crime Control and Safe Street Act, 18 U.S.C. § 2518. Specifically, the defendant argued the wiretaps "were not necessary" because ordinary investigative procedures would likely have been effective. *Id.* at 1395 (citing *United States v. Brone*, 792 F.2d 1504, 1506 (9th Cir. 1986)). The Ninth Circuit ruled that, even if the wiretaps were invalid, the communications were admissible for impeachment purposes to contradict statements made on direct examination. *Echavarria-Olarte*, 904 F.2d at 1397.

Defendants cite no authority for the proposition that the impeachment exception discussed in *Echavarria-Olarte* in the context of a Title III wiretap applies equally under the Wiretap Act. Regardless, assuming it does, whether Alajah and his counsel submitted the recordings in the state court proceedings solely for impeachment purposes is a question of fact. To resolve that question, the Court would have to review and analyze the evidence in the state court proceeding. As previously noted, however, the Court declines to convert Defendants' motion to dismiss into a summary judgment motion to consider such factual questions.

Here, Plaintiffs allege that Alajah disclosed the recordings to Piñol and that Alajah, Piñol, and HPK submitted recordings into the record in the child custody proceeding. (Dkt. 2 at ¶ 42).

Regardless of any impeachment defense, Plaintiffs' allegations sufficiently aver that Alajah, Piñol, and HPK willfully and intentionally disclosed unlawfully intercepted oral communications.[7] (*Id.* at ¶¶ 185-213).

B.   **Supplemental Jurisdiction -- State Law Claims**

The Court has original federal question jurisdiction over the Plaintiffs' Wiretap Act claims under 28 U.S.C. § 1331. Plaintiffs' remaining claims are state law claims, including defamation, tortious interference with contract, constructive eviction, invasion of privacy, intentional infliction of emotional distress, and violation of the Idaho Child Protective Act. (Dkt. 2). The Court may only adjudicate these claims if it retains supplemental jurisdiction under 28 U.S.C. § 1367.

The doctrine of supplemental jurisdiction "allow[s] courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988), *superseded on other grounds by Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22 (2025). When deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172-73 (1997). Section 1367 provides that, with certain exceptions, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the

---

[7]   Defendants rely solely on their assertion that they did not violate the Wiretap Act when disclosing the recordings in the state court proceedings to challenge Plaintiffs' disclosure claims. Jessica, Jeremy, and Elk Summit, however, are not parties in the state court proceedings, and Defendants have not offered any basis to challenge Plaintiffs' disclosure claims against them.

**MEMORANDUM DECISION AND ORDER - 17**

same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A district court is within its discretion to decline exercising supplemental jurisdiction where the claim raises a novel or complex issue of state law. 28 U.S.C. § 1367(c). Within this class of novel and complex state law claims, "[f]ederal courts customarily decline to intervene in the realm of domestic relations." *Lewton*, 772 F. Supp. 2d at 1061; *see also Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004) ("One of the principal areas in which [the Supreme Court] has customarily declined to intervene is in the realm of domestic relations."), *abrogated on other grounds by Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).

Here, Plaintiffs have alleged multiple state law claims against multiple defendants involving significant interpersonal disputes of a familial nature related, in large part, to a child custody dispute. In addition to raising domestic relation issues, the claims raise novel and complex questions of Idaho law. For example, to what extent is Jessica liable for invasion of privacy if she only purchased the recording device but did not operate it? (Dkt. 13-2 at p. 16). What is sufficient proof to show Lauren's "title" to the residence before she can prove constructive eviction? (*Id.*). Is Big Sky's alleged termination of a business relationship with a third party sufficient to plead an emotional distress claim? (*Id.*). What is the scope of Piñol's litigation privilege regarding his alleged tortious conduct in the child custody proceeding? (*Id.* at p. 18, Dkt. 43 at p. 22). These are just a few examples of this case's complex, novel state law issues, all of which have prompted emotionally tinged, convoluted legal arguments from both Plaintiffs and Defendants.

Because Plaintiffs' state law claims involve issues of domestic relations and raise numerous novel, complex state law issues, it would be improper for the Court to ignore the federal

courts' general deference to state courts regarding such issues. Accordingly, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims.

**C.    Plaintiffs' Motion to Seal**

Plaintiffs move to seal certain documents filed in the record. First, Plaintiffs request the Court seal a document containing the minor's confidential medical information. (Dkt. 27-6 at pp. 16-17). Among other information, this document contains the child's name and birthdate. Rule 5.2 of the Federal Rules of Civil Procedure protects such information from disclosure.

Second, Plaintiffs request the Court seal the exhibits they attached in support of their motion for leave to file a second amended complaint. (Dkt. 38-2). These documents relate to Alajah's request for a protection order and contain sensitive, confidential information regarding the child. Under Idaho law, a protection order petition and related documents are exempt from public disclosure. Idaho Court Administrative Rule 32(g)(16). Because these authorities protect the documents from public disclosure, the Court grants Plaintiffs' motion to seal.

**D.    Plaintiffs' Motion to File Second Amended Complaint**

Plaintiff also moves for leave to file a second amended complaint, seeking to include additional state law claims unrelated to the Wiretap Act claims. (Dkt. 37). Because Plaintiffs only seek to amend their state law claims, the Court denies Plaintiffs' motion for leave to file a second amended complaint as moot.

## IV.    ORDER

IT IS ORDERED that:

1.    Defendants' Partial Motion to Dismiss (Dkt. 13) is **DENIED**.

2.     Pursuant to 28 U.S.C. § 1367(c), this Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims. Accordingly, Plaintiffs' state law claims are **DISMISSED without prejudice**. The period of limitations for Plaintiffs' state law claims is tolled for thirty days after their dismissal under 28 U.S.C. § 1367(d), unless state law provides for a longer tolling period.

3.     Plaintiffs' Motion for Leave to File an Amended and Supplemental Complaint (Dkt. 37) is **DENIED**.

4.     Plaintiffs' Motion to Seal (Dkt. 38) is **GRANTED**.

DATED: February 19, 2025

Amanda K. Brailsford
U.S. District Court Judge